IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

AMBER MAREE CANTER[1]
(F/K/A CHARLES CANTER),

    Plaintiff,

v.

NAA E. ODIFIE, *et al.*,

    Defendants.

Case No.: GJH-17-1273

## MEMORANDUM OPINION

*Pro Se* Plaintiff Amber Maree Canter (f/k/a Charles Canter) brings this action against Defendants Naa E. Odifie and Krista Self (f/k/a Krista Bilak) pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants failed to provide adequate medical care as required by the Eighth Amendment while Plaintiff was incarcerated by the Maryland Department of Public Safety and Correctional Services ("DPSCS") at the North Branch Correctional Institution ("NBCI"). ECF No. 1. Presently pending before the Court is Defendant Self's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 9. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant Self's Motion is granted. Claims against Defendant Odifie shall also be dismissed for failure to state a claim.

---

[1] Plaintiff successfully petitioned the Circuit Court for Baltimore City for a name change and requests that her adopted name be reflected on the docket. ECF No. 16; *see also In Re Charles Canter*, Case No. 24D17000194 (Balt. City Cir. Ct. 2017). Plaintiff's request will be granted, and the Court therefore adopts female pronouns when referencing Plaintiff in this opinion. In addition, Plaintiff's Motion to Proceed in Forma Pauperis, ECF No. 2, shall be granted.

1

## I. BACKGROUND

Plaintiff alleges that Defendant Self failed to promptly treat her injuries sustained from a fall on March 22, 2017, both Defendants refused to provide Plaintiff with her requested pain management medication while Plaintiff was incarcerated at NBCI, and Defendant Self withheld pain medication from Plaintiff in retaliation for Plaintiff filing administrative complaints against her. ECF No. 1. In her Complaint, Plaintiff sets forth a detailed discussion of her medical history, treatment, and allegedly inadequate care provided by Defendants. In response, Defendant Self provides the Court with Plaintiff's relevant medical records and an affidavit from NBCI Medical Director Dr. Ava Joubert, which the Court will discuss herein. Plaintiff has an extensive medical history and suffers from a number of ailments, including temporomandibular disorder ("TMD," sustained after an injury to her jaw), gallactorhea, epilepsy, anterior pituitary disorder, and depressive disorder. *See* ECF No. 9-4 (medical records); ECF No. 9-5 ¶ 3 (Joubert Affidavit). Plaintiff has a past history of drug abuse and has been prescribed Tylenol #3 (codeine) since 2008 for chronic pain stemming from trauma to her face in 2007 that resulted in multiple fractures to her lower jaw and required emergency surgery. ECF No. 9-5 ¶ 5. On January 27, 2017, Plaintiff underwent further treatment for her TMD and was on the following medication regimen: Naproxen, Tylenol, Tylenol #3 twice daily as needed for two weeks, Baclofen twice daily as needed, Gabapentin, and Depakote. *Id.* ¶ 6.[2]

On February 15, 2017, Plaintiff was seen by Defendant Self, a nurse practitioner employed by Wexford Health Solutions to provide medical services to DPSCS inmates. ECF Nos. 9-4; 9-6 (Self Affidavit). Plaintiff indicated that her pain medication was ineffective and

---

[2] In her Complaint, Plaintiff sets forth a lengthy discussion of her past medical history and treatment received while incarcerated in various DPSCS facilities prior to January of 2017, but the details will not be repeated herein. Plaintiff does not appear to allege that she received inadequate care during and immediately following her January 27, 2017 treatment.

2

requested Self to provide Tylenol #3. Self informed Plaintiff that the drug was "not indicated for long-term use" but submitted a request for a pain management consult on Plaintiff's behalf. ECF No. 9-4 at 1. Plaintiff again saw Self on March 1, 11, and 21 whereby she continued to complain of chronic pain and requested Tylenol #3. *See id.* at 7–12. Self's request for a pain management consult had not received a response, and Self resubmitted the request each time. *Id.* It is unclear whether Self actually provided Plaintiff with Tylenol #3 during these visits.

On March 22, 2017, Plaintiff was seen by Registered Nurse Breauna Baker for emergent care after Plaintiff reported falling due to a possible seizure. *Id.* at 13–14. Plaintiff admitted to being intoxicated at the time, was observed to have an abrasion and small hematoma to the right facial area but no post-seizure symptoms, and was released back into custody in stable condition. *Id.* The next day, Plaintiff was seen by Self, again admitted to being intoxicated, and stated that she fell and hit the side of her face on the toilet as the result of a seizure. *Id.* at 15–17. Self found no post-seizure symptoms and only minor redness, swelling, and bruising to her face and declined to prescribe narcotic medication given Plaintiff's intoxication and without further confirmation that Plaintiff had in fact suffered an injury warranting such medication. *Id.*; ECF No. 9-6 ¶ 3.

On March 24, 2017, Odifie, the clinical pharmacist, provided a pain management plan for Plaintiff's condition, and her drug therapy recommendation was to discontinue Tylenol, Tylenol #3, Baclofen, and Gabapentin; continue Depakote; and start Icy Hot, Elavil, and Robaxin. ECF No. 9-4 at 18–19. At NBCI, the clinical pharmacist is responsible for making medication recommendations to clinicians, like Defendant Self, who have independent prescriptive authority to adopt or deviate from the clinical pharmacist's recommendations. ECF No. 9-5 ¶¶ 5, 6. Separate from Odifie's pain management plan, Plaintiff was again seen by Self on March 24 and

3

complained that she had limited mobility and increased pain in her jaw as a result of her March 22 fall. ECF No. 9-4 at 20–22. Self certified Plaintiff for physical therapy and prescribed Tylenol #3 for an additional week. *Id.*

On March 27, 2017, an x-ray taken of Plaintiff's jaw after her March 22 fall indicated a "non-displaced fracture of right zygomatic arch." ECF No. 9-4 at 23. On March 28, 2017, Plaintiff was seen at a patient care conference with Self, along with psychiatry, behavioral health, and dental providers. *Id.* 24–25. Plaintiff's medical records indicate that as a result of the conference, Plaintiff would be weaned from Neurontin, Tylenol #3 would be continued until its expiration date, Tylenol and Baclofen would be discontinued, Depakote and Naproxen would be continued, and Icy Hot, Elavil, and Robaxin would be ordered. Over the next two months, Plaintiff continued to receive treatment from a number of medical providers, including Defendants Self and Odifie, whereby Plaintiff repeatedly indicated that her pain management regimen was inadequate and specifically requested that Tylenol #3 be reinstated. *Id.* 28–61.[3] Notably, Plaintiff again raised objections to her drug treatment regimen with Odifie on April 7, 2017. ECF No. 9-4 at 32–33. Plaintiff expressed her concern that Depakote, prescribed for management of her seizure disorder before her incarceration, upsets her stomach and she had declined to take it prior to being imprisoned and was currently declining to take it. Plaintiff also related that Gabapentin does not take all of the pain away, but "it works." *Id.* at 32. Odifie explained that the "medical team . . . [tries] as much as possible to minimize or prevent poly-pharmacy (that is: unnecessary use of medications)." *Id.* According to Odifie, Depakote was prescribed to Plaintiff because it addresses three issues: it is an anti-seizure medication, a mood stabilizer, and treats chronic nerve pain. Plaintiff has all three of these diagnoses. Odifie further

---

[3] Plaintiff's medical records show that Plaintiff was found unresponsive on April 27, 2017 and required emergency medical treatment for apparent seizure-related issues. As these medical conditions are not the subject of Plaintiff's Complaint, they are not addressed in detail herein.

4

explained that "[a]dding Gabapentin duplicates therapy with Depakote and using Gabapentin in place of Depakote leaves [her] mood disorder untreated." *Id.* Odifie offered a solution to Plaintiff's stated side effect with Depakote: substituting Tegretol as an alternative drug, which has the same anti-seizure, mood stabilizing, and nerve pain treatment effect as Depakote. *Id.* Odifie noted that Plaintiff appeared to be satisfied with that resolution and appeared to understand the reasoning for the decisions made.

## II.  STANDARD OF REVIEW

Defendant's motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery). Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," show that there is "no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).

**III. DISCUSSION**

Plaintiff asserts that Defendants violated her Eighth Amendment rights when they substituted her prescriptions for Tylenol #3, Baclofen, and Gabapentin with less effective drugs. ECF No. 1 at 16. Plaintiff further alleges that Defendant Self failed to provide adequate medical treatment following her fall on March 22, 2017 and withheld Tylenol #3 in retaliation for Plaintiff filing an administrative complaint against Self and threatening to expose an alleged

affair between Self and a correctional officer. ECF No. 13-1 at 23. As detailed below, Plaintiff's claims are without merit and she is not entitled to relief.[4]

### A. Eighth Amendment Violation

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity

---

[4] The Court's electronic docket does not indicate that either defendant was served with a copy of the Complaint. While Defendant Self's Motion effectively waives service of process, Defendant Odifie has not filed a similar pleading or motion. However, for the reasons stated below, the Court will dismiss Plaintiff's claims against Odifie because the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (refusal to evaluate transgender inmate for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm).

In this case, the parties do not dispute that Plaintiff received treatment for her numerous ailments, including injuries sustained from her March 22nd fall; rather, Plaintiff maintains that Defendant Self delayed treatment following her fall, and Defendants provided an inadequate pain management regimen because they were not authorized or qualified to prescribe pain

8

management medicine and contradicted orders previously written by other treating physicians. First, regarding treatment after the fall, the record shows that Defendant Self treated Plaintiff immediately following the incident. ECF No. 9-4 at 15. Even though subsequent x-rays indicated that Plaintiff had a fractured jaw, Self's conclusion that Plaintiff's injuries appeared minor, along with her refusal to provide Plaintiff with Tylenol #3 because Plaintiff appeared to be intoxicated and had been using the drug for an extended period of time, was reasonable. Furthermore, Self continued to provide treatment to Plaintiff, including a temporary dosage of Tylenol #3, as Plaintiff's pain persisted. *Id.* at 20. That Plaintiff went without Tylenol #3 immediately following her fall falls far short of a violation of her Eighth Amendment Rights.[5]

Second, regarding Defendants' changes to Plaintiff's pain management regimen, Plaintiff's unsupported statements that Defendants are not permitted to prescribe pain management medication is without merit. Both clinical pharmacists and nurse practitioners can prescribe medication and are authorized to do so for pain management. ECF No. 9-5 ¶¶ 5, 6; *see also* MD Code Regs. 10.27.07.02(A)(11) (2017). Furthermore, Plaintiff's allegations that other treating physicians, specifically Drs. Ashraf and Graves, recommended that she be prescribed Tylenol #3, even if true, only establishes a difference of opinion amongst treatment providers, not an Eighth Amendment Violation. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("At most, [Plaintiff] has raised a difference of medical opinion regarding his treatment. A difference of opinion does not amount to a deliberate indifference to [Plaintiff's] serious medical needs.").[6]

---

[5] In her Opposition, Canter claims she almost died of internal infections after the fall because she does not have a spleen. ECF No. 13-1 at 8. This allegation was not raised in the Complaint, nor is there any evidence that a delay in providing Canter with Tylenol #3 or an x-ray of her face contributed to such an infection. Further, Canter may not, by way of Opposition to a motion, raise an entirely new claim not fairly stated in the Complaint.

[6] In her Complaint, Plaintiff alleges that her physician, Dr. Ashraf, and dentist, Dr. Graves, recommended that Plaintiff be prescribed Tylenol #3. ECF No. 1 at 4, 9. While the medical records provided by Defendant include reports from Ashraf, ECF No. 9-4 at 3, no such records from Graves exist. Regardless, Defendant's failure to follow Graves' recommendation is not a constitutional violation, and the lack of medical records from Graves does not establish a genuine dispute of material fact.

9

## B. Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Plaintiff's claim that Self retaliated against her because Plaintiff possessed personal information about Self, including compromising photographs, and started a rumor that Self was having an affair with a correctional officer is without merit. *See* ECF 13-1 at 23. Even if true, Plaintiff does not have a constitutionally protected right to possess such information. Moreover, Self denies this allegation and states under oath that personal relationships between staff members at NBCI is not prohibited, thus there would be no reason for her to retaliate against Plaintiff for restating a rumor about her. ECF No. 9-6 ¶¶ 6, 7.

Finally, Plaintiff's claims that 1) Self, in the presence of Assistant Director of Nursing William Beeman on April 6, 2017, offered to provide Tylenol #3 to Plaintiff in exchange for Plaintiff withdrawing her previously-filed administrative complaint and 2) Self withheld Tylenol #3 from Plaintiff because Graves filed a complaint against Self with the State Medical Director are also without merit. *See* ECF No. 1 at 11, 14. Both Self and Beeman state that no such offer was made. *See* ECF No. 9-6 ¶ 4 (Self Affidavit); ECF No. 9-7 ¶ 4 (Beeman Affidavit). Further, neither Self, the Wexford State Medical Director, nor the NBCI Medical Director are aware of any complaints filed by Graves against Self. ECF No. 9-6 at ¶ 5. Regardless, even if Plaintiff could substantiate her claims of retaliation, Plaintiff's medical records show that Self's failure to provide Tylenol #3 when requested was made based on legitimate, non-retaliatory medical reasons. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, or in the Alternative Motion for Summary Judgment, ECF No. 9, shall be granted. A separate Order follows.

Dated: March 26, 2018

GEORGE J. HAZEL
United States District Judge